THE PEOPLES' BANK, Garnishee of WILLIAM H. TREGO *vs.* WILLIAM H. SHRYOCK and THOMAS J. SHRYOCK.

*Attachment—Debt due to a Co-partnership—Continuing partnership—Creditor of a Partner—Tangible effects of a Partnership—Individual debt of a Partner—Nature of the proceeding of Attachment, in this State—Wallace vs. Patterson, 2 H. & McH., 463.*

A debt due to a co-partnership is not liable to attachment at the suit of a creditor of one of the partners, where the partnership is a continuing one, and where there has been no adjustment of the partnership affairs.

The tangible effects of a partnership are liable to attachment and sale for the individual debt of a partner.

The proceeding of attachment in this State is essentially a legal proceeding, and in no way appropriate to ascertain and settle the equitable rights between the garnishee and defendant, or to ascertain by adjusting the partnership affairs, the true interest of the defendant in the fund attached.

The case of *Wallace vs. Patterson, 2 Harris & McHenry, 463,* regarded as too unsatisfactory to be adopted as a binding authority.

APPEAL from the Superior Court of Baltimore City.

The appellees in April, 1872, obtained a judgment against William H. Trego, a member of the firm of Trego & Kirkland, engaged in business in Baltimore City. In May following an attachment was issued on this judgment and laid in the hands of the appellant, to bind the interest of said Trego in a sum of money standing upon the books of the appellant to the credit of the firm of Trego & Kirkland; the amount then standing to the credit of the firm being more than double the amount of the plaintiffs' claim and costs. The appellant appeared

and pleaded "*nulla bona*," and Trego & Kirkland claimed the funds so attached as being the funds and property of said firm, for the use of Kirkland, and held by them, and deposited by them for the use and benefit of their customers. The case was tried before the Court without the aid of a jury.

*Exception.*—The plaintiffs offered the five following prayers:

1. If the jury find from the evidence that W. H. Trego, the defendant, was a member of the firm of Trego & Kirkland, and equally interested with Kirkland in said firm, and while such partner the attachment on judgment, issued at the instance of the plaintiffs, was laid in the hands of the Peoples' Bank; and shall further find that since the laying of said attachment said bank has had assets in its hands belonging to said firm, then the verdict must be for the plaintiffs for the amount of the original judgment, with interest thereon; provided the amount in the hands of said bank since the levy of said attachment, has been double the amount of said judgment.

2. If the jury find the facts set forth in plaintiffs' first prayer, and shall further find that it is uncertain whether the partnership property of, and the partnership debts due to, the said firm of Trego & Kirkland, will be more than sufficient to satisfy and pay the debts due from the said firm, their verdict must still be for the plaintiffs.

3. If the jury find the facts set forth in plaintiffs' first prayer, and shall further find that said firm, since the levy of said attachment, has been dissolved, and that the debts of said firm have been settled or paid, their verdict must be for the plaintiffs.

4. If the jury find from the evidence that the firm of Trego & Kirkland, of which the defendant was a member, had funds in the hands of the garnishee in at least double the amount of plaintiffs' claim, and that the interest of said defendant in said firm was one moiety, and shall

further find that said garnishee released said funds upon security being furnished by defendant alone, then the verdict must be for the plaintiffs.

5. If the jury find that subsequently to the levy of the attachment in this case, the said defendant Trego drew from the firm annually a sum more than sufficient to meet the attachment levied in this case, their verdict must be for the plaintiffs, notwithstanding they shall find that the funds so drawn from the garnishee upon the filing of the bond spoken of in plaintiffs' fourth prayer, were used for the payment of the debts of said firm of Trego & Kirkland.

And the garnishee prayed the Court to rule as matters of law the following propositions:

1. That if when the attachment was laid in the hands of the garnishee, it had on deposit the sum of $2800 belonging to the firm of Trego & Kirkland, and that said firm was then insolvent and continued insolvent down to its dissolution in April, 1874, and has continued so to this time, then the plaintiffs cannot recover.

2. That if the Court find the following facts, viz., the laying of the attachment in the hands of the garnishee, that said garnishee then had in its hands the sum of $2800, belonging to the firm of Trego & Kirkland, that said firm was then largely indebted, and that on payment of the debts of said firm, there would be nothing left of its assets, including said sum of $2800, then the plaintiffs cannot recover.

3. That the plaintiffs cannot recover unless the Court finds as a matter of fact, the laying of the attachment, that the garnishee then had in its hands the sum of $2800 belonging to the firm of Trego & Kirkland, and that the defendant, Trego, had a separate interest in said sum after the payment of the debts of the firm aforesaid, and that such separate interest only can be recovered under this attachment, and that there is no evidence in this case of any such separate interest.

4. That it is not competent for a Court of law in a proceeding of this sort, to take an account of the condition of the firm so as to ascertain the individual interests of Trego in the money attached in the hands of the Peoples' Bank of Baltimore, and the plaintiffs cannot recover.

5. That·if the firm of Trego & Kirkland continued down to April, 1874, and was then dissolved, and that said firm was insolvent from the laying of the attachment down to its dissolution, and that Trego then retired from said firm under an agreement with said Kirkland, to take the assets of the firm and pay its debts, and that said Kirkland paid the debts of said firm, exceeding its assets, to the sum of $8000 or upwards, then the plaintiffs are not entitled to recover.

The Court (DOBBIN, J.,) granted the prayers of the plaintiffs and rejected those of the garnishee. To this ruling of the Court the garnishee excepted. The Court rendered a verdict for the plaintiffs, and judgment was entered accordingly. The garnishee appealed.

The cause was argued before BARTOL, C. J., BOWIE, STEWART, BRENT, MILLER and ALVEY, J.

*John K. Cowen,* for the appellant.

The Court below held that as the firm had in bank more than double the amount of the plaintiffs' claim and costs, the plaintiffs must have judgment for the full amount of their claim and costs, without regard to the payment of the partnership debts, or the rights between the parties. For this view it relied on *Wallace vs. Patterson,* 2 *H. & McH.,* 463.

It is submitted this case is not the law of Maryland to-day. *Berry vs. Harris,* 22 *Md.,* 39; *Rhodes vs. Amsink,* 38 *Md.,* 354; *Johnson vs. Matthews,* 32 *Md.,* 368.

All the authorities and decisions distinguish between an execution against the tangible property of the firm and

an attempt to take by garnishment the credits of a firm, to pay the private debt of one partner.

What, then, is the modern rule? It is this: "No private creditor of a partner can take by his execution anything more than that partner's share in whatever surplus remains after the partnership effects have paid the partnership debts." See authorities collected in *Parsons on Partnership, chap.* 10, *sec.* 1, *page* 343, *note c; chap.* 10, *sec* 2, *page* 350–357, *and authorities in note s, page* 352.

This is now the settled law of England, of the Supreme Court, and of the Courts generally of this country. There are differences as to the mode by which you reach this result, (*Parsons on Partnership, page* 352–3,) but none as to the result itself.

There is a clear distinction between an attachment of *tangible* property and an attachment of a debt. Partnership credits can in no case be taken by garnishment. *Knew vs. Hoffman,* 65 *Penna.,* 126; *Alter vs. Brooke and Barrington,* 9 *Phila.,* 256; *Myers vs. Smith,* 29 *Ohio,* 124, 126; *Barry vs. Fisher,* 39 *How. Pr. R.,* 526; *Drake on Attachment, secs.* 567–570, *and notes.*

The reason why you cannot attach a partner's resulting interest is obvious. It results from the nature of that interest, *which has no independent existence,* and it may fall on one side or the other, as the account turns out. In 65 *Penn.,* 126, the Court says: "where an account is to be had, there is no debt to attach." This Court, in 22 *Md.,* 39, says that it is the function of the attachment to measure the interest of the partner in the *chose in action.*

The attachment determines how much of Trego & Kirkland's money the bank must pay the plaintiffs; and this cannot be done without an account, and a resort to a Court of equity to find Trego's separate interest therein, and this necessarily ends the attachment process.

*J. D. Lipscomb* and *Henry D. Loney*, for the appellees.

The simple question arises, is a fund in the hands of a bank, deposited by a firm composed of two members, liable to attachment to satisfy a judgment against one of the members? The statement of the proposition readily furnishes its reply.

The creditors of any one partner may take in execution the partner's interest in all the tangible property of the partnership. *Chapman vs. Koops,* 3 *Bos. & Pul* , 288.

Any plaintiff having a judgment or decree in any Court of law or equity in this State, may, *instead of any other execution,* issue an attachment against the lands, tenements, goods, chattels and credits of the defendant, in the plaintiff's own hands, or in the hands of any other person. *Art.* 10, *sec.* 30, *of the Code.*

The fund in the hands of the garnishee was the property of the partners according to their respective interests in the firm, and as such, is liable to execution by way of attachment, for the debt of an individual partner. *Wallace vs. Patterson,* 2 *H. & McH.,* 463 ; *McCarty vs. Emlen,* 2 *Dallas,* 277 ; *Chapman vs. Coops,* 3 *Bos. & Pul.,* 288 ; *Parker vs. Pistor,* 3 *Bos. & Pul.,* 287.

The interests of the partners being equal, and the fund more than double the amount of the judgment, and no one but the attaching creditors having any possible claim upon it, there can be no ground for denying condemnation of said fund to satisfy the attaching creditors.

If there were partnership creditors, and they were urging their claims as against said fund, the appellees would be entitled to condemnation ; but the case is relieved of that assumed difficulty as there are no such creditors.

The only possible way in which the interest of the defendant, Trego, in the fund attached could be arrived at, would be by a proceeding in equity, when the relative rights of partnership and individual creditors could be determined ; and it is not competent for a Court of law to investigate such rights.

If this attachment could not be maintained, a creditor of an individual partner will find it impossible to secure his claim, notwithstanding the partnership may be abundantly rich, for until the partnership assets and liabilities are balanced, and the resulting interests of each partner adjusted, no attachment, upon the theory of the appellant, can be maintained, and the individual creditor is remediless.

BRENT, J., delivered the opinion of the Court.

The appellees, having obtained a judgment against William H. Trego, issued upon it an attachment by way of execution. This attachment was laid in the hands of the People's Bank of Baltimore, to bind the interest of the defendant, Trego, in a sum of money standing upon the books of the bank to the credit of the firm of Trego & Kirkland, of which firm Trego was a partner.

The question then arises, is a debt due to a co-partnership liable to attachment at the suit of a creditor of one of the partners?

If the attachment had been laid upon the tangible effects of the firm, there would be no doubt of the right to do so, for all the authorities concur that the property of a firm may be sold for the debt of one of the partners. When sold the vendee purchases and is substituted to nothing more than the interest of the partner, which afterwards becomes the subject of ascertainment by a proper adjustment of the respective interests of the partners. The rights of co-partners and creditors of the firm are not thereby sacrificed or disturbed. But where a debt is the subject of attachment, the judgment, if obtained against the garnishee, changes the right to the fund without any settlement of partnership accounts, and vests in the attaching creditor an absolute claim to the payment over to him of so much money. In *Drake on Attachment, sec.* 567, the author says, "The attachment of a debt due to a

28                    v. 48.

co-partnership, in an action against one of the partners, is justly distinguishable from the seizure on attachment or execution of tangible effects of the firm for the same purpose." He refers to the case of *Winston vs. Ewing*, 1 *Ala.*, 129, and this case is a very strong one upon the question now presented for our decision. There it was sought to subject the debt due to a firm to an attachment issued against one of the partners. The Court held that this could not be done. The property of the partnership, it was conceded, was liable to execution and sale for the separate debt of a partner, the vendee under such sale becoming tenant in common with the other partner. But it was otherwise held in regard to a debt due. The Court says, "it has been expressly adjudged that the interest of one partner in a debt due to the partnership cannot be subjected by process of attachment, to the satisfaction of the separate debt of that partner, without showing from the state of the partnership accounts, as between the partners and with reference to the indebtedness of the partnership, what the right or interest claimed amounts to." The authorities cited are 6 *Mass.*, 276; 1 *Gall.*, 367; 2 *Conn.*, 514, and 4 *Conn.*, 540, and they conclusively show that an attachment like the present would not be maintained in the Courts of either Massachusetts or Connecticut. In *Lyndon vs. Gorham*, 1 *Gallison*, 367, decided by Judge STORY; that learned Judge says, "In order to adjudge the trustee responsible in this suit, it must be decided that the funds of one partnership may be applied to the payment of the debts of another partnership, upon the mere proof that the principal debtor has an interest in each firm. If this be correct, it will follow that a *separate creditor of one partner will have greater equitable as well as legal rights than the partner himself has.* The general rule undoubtedly is, that the interest of each partner in the *partnership funds* is only what remains after the partnership accounts are taken; and unless upon such an

account the partner be a creditor of the fund, he is entitled to nothing." In *Johnson vs. King*, 6 *Humph.*, 233, it is said, "The question in this case is, whether an execution creditor of one member of a partnership, is entitled to a judgment in a garnishment proceeding, against a debtor to such partnership. This question we decide in the negative. Such debt belongs to and is assets of the partnership, primarily liable to the satisfaction of partnership debts. If a judgment were given at law, upon the garnishment proceeding against the debtor to the partnership, to satisfy the separate liability of one of the partners, it would unjustly abstract a portion of the fund primarily belonging to the objects and purposes and creditors of the concern. And in such garnishment nothing can be done but to give or refuse the judgment. The Court has no power to impound the debt, until by the adjustment of all the partnership affairs, it shall appear whether the separate debtor of the execution creditor has any and what interest in the general surplus, or in the particular debt so impounded. Such proceedings cannot take place at law."

We have quoted at length from this case, because the views there expressed seem to be specially appropriate to the case before us. The proceeding of attachment in this State is essentially a legal proceeding and in no way appropriate to ascertain and settle the equitable rights between the garnishee and defendant, or to ascertain by adjusting the partnership affairs, the true interest of the defendant in the fund attached. The only judgment which could be given against the garnishee would be for a proportion of the money due the partnership,—that proportion to be measured by the number of the members composing the firm,—the amount due the attaching creditor. This would certainly be against the weight of authorities in this country, and in most cases productive of the greatest injustice.

In the cases of *Sheedy vs. The Second National Bank, Garn.*, 62 *Missouri*, 18, and *Myers vs. Smith, et al.*, 29

*Ohio*, 120, both decided in 1876, it was held that partnership demands, cannot be garnished for the separate debt of one of the partners. And to the same effect are the decisions in Vermont, New Hampshire, New York, Louisiana and Mississippi. See *Drake on Attachment, (4th edition,) sec.* 570, *and notes.* The exception to this rule is, where equity powers have been conferred by statute upon the common law Courts, and when by virtue of such powers, they can compel a settlement of the partnership for the purpose of ascertaining whether one of the partners has such an interest in a particular debt due the firm, as to justify its appropriation to the payment of his individual indebtedness. As no such powers have been conferred upon the common law Courts of this State, the exception cannot be applied to an attachment here.

The only cases in this country in which it is claimed a contrary doctrine is held, and to which we have been referred, are the cases of *McCarty vs. Emlen*, 2 *Dallas*, 277 ; *Knox vs. Schepler*, 2 *Hill*, 595, and *Wallace vs. Patterson*, 2 *H. & McH.*, 463. The case of *McCarty and Emlen* is a very old one, having been decided in 1797. If it has not been expressly overruled, it certainly has been very much shaken by the case of *Knerr vs. Hoffman*, 65 *Pa.*, 126, in which the opinion of the Court was delivered by Judge SHARSWOOD. So much so, that the doctrine it announces can hardly be considered as the present recognized doctrine of the Courts of Pennsylvania. And in this view we think we are strengthened by what is said by Judge AGNEW in the case of *Alter vs Brooke and Barrington*, 9 *Phila. Reps.*, 258. But apart from this, the doctrine announced in that case does not recommend itself to our judgment, and we are not disposed to adopt it. The case of *Knox vs. Schepler*, 2 *Hill's Reps.*, like the case in 22 *Md.*, 30, is one where the defendant was the sole surviving partner of the firm of Gable, Cowell & Schepler. It therefore rested upon a different principle from

the case before us, in which the partnership is a *continuing* one at the time of the attachment. It is however said in the opinion of the Court "that the interest of one partner may be taken in execution or may be the subject of attachment at the suit of a separate creditor of that partner." But the rule laid down in regard to the disposition of the fund after judgment of condemnation, shows that under the law as recognized in South Carolina, the case is brought at least within the equity of the exception to which we have above alluded. The judgment of the Court was, that the money should be paid over *conditionally* to the attaching creditor,—that is, it was "to be held by him as the defendant had it, subject to the equities of the other partners and of the creditors of the firm," and he was also to give bond "to answer any claim which might thereafter be made on such fund." We are not disposed to quarrel with this rule, but cannot assent to hold it applicable to our Courts. The language of Ch. J. SWIFT, in his opinion in *Church vs. Knox*, 2 *Conn.*, is very appropriate to it. He observes on page 518, "It is further said, if the plaintiffs have recovered more than the proportion of the defendant in this debt, and it should be wanted for the payment of partnership debts, the other partners may call them to account, and recover back such money. At this rate a judgment may be rendered in favor of a man for a sum certain, with a liability to refund the whole, or a part of it, on some contingency. It is sufficient to state the proposition to show the absurdity of it. What right can a Court have to say, that a certain part of a debt due to a partnership may be taken to pay the private debt of a partner in a suit where the partners are not parties; and then, if wanted to pay the debts of the partnership, to oblige them to resort to the creditor?"

But the case of *Wallace vs. Patterson*, 2 *Harris & McHenry*, 463, is relied upon to sustain this attachment. It is to be said of that case which was decided as far back

as 1792, that no opinion of the Court was filed in it, and it is impossible from the report of the case to ascertain the true ground upon which the judgment was given. The case is altogether too unsatisfactory to be adopted as a binding authority. In the case of *Berry, Garn. vs. Harris, Adm'r* 22 *Md.*, 30, the point was made, that the separate creditor of one partner can attach a debt due the partnership, and the case of *Wallace vs. Patterson*, was cited in support of the proposition. Although this case was decided upon the ground, that the defendant was a surviving partner, and that by virtue of his survivorship the legal interest in the debt attached was absolutely transferred to him and therefore liable to be attached for his separate debt, the general proposition contended for was noticed. And the Court then intimated in the strongest manner, that the case of *Wallace vs. Patterson* would not be considered a binding authority for the point to which it was cited. On page 40, Judge Bowie, who delivered the opinion of the Court, uses this language, "If this was a case of continuing partnership, we should have much difficulty in distinguishing it on principle from the case of *Fisk and another vs. Herrick*, 6 *Mass.*, 271 ; *Lyndon vs. Gorham*, 1 *Gall.*, 367, and the cases in *Ala. and Tenn. ;* but the case of a surviving partner, invested with the entire legal property, and control over the chattel, so broadly marks the line between them, that we are not at liberty to disregard the legal claims of the attaching creditor. The case of *Wallace vs. Patterson*, 2 *H. & McH.*, 463, was the case of a domestic creditor, against one of several non-resident partners, whose firm as well as the debtor partner had become bankrupt. The distinction between attachments against tangible chattels and *choses in action* belonging to the firm, and attachments issued during the existence of the firm, and after its dissolution, was not adverted to, and no opinion was given ; we do not regard it therefore as decisive of the point to which it was cited."

So satisfied are we upon the ground of reason and expediency, and the great weight of authority that the partnership credits of a continuing partnership should not be subjected to the process of attachment at the suit of a separate creditor of one of the partners, that we cannot adopt the case of *Wallace vs. Patterson* to the extent which is claimed for it.

In our opinion then, in a case like the present where the partnership is a continuing one, and where there has been no adjustment of partnership affairs, a debt due the partnership cannot be taken by garnishment to pay the individual debt of one of the members of the firm.

This judgment will therefore be reversed and judgment entered for the appellant.

*Judgment reversed, and*
*judgment for appellant.*